`UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES F.,

               Plaintiff,                              **DECISION AND ORDER**

     v.

                                              1:22-CV-00049 EAW

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff James F. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on December 28, 2018. (Dkt. 5 at 89, 280-86).[1] In his application, Plaintiff alleged disability beginning July 17, 2018. (*Id.*

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

at 89, 280).  Plaintiff's application was initially denied on March 14, 2019.  (*Id.* at 89, 207-

12).  At Plaintiff's request, a telephone hearing was held before administrative law judge

("ALJ") Michael Stacchini on May 29, 2020.  (*Id.* at 89, 123-69).  On September 2, 2020,

the ALJ issued an unfavorable decision.  (*Id.* at 89-101).  Plaintiff requested Appeals

Council review; his request was denied on November 23, 2021, making the ALJ's

determination the Commissioner's final decision.  (*Id.* at 6-12).  This action followed.

## LEGAL STANDARD

I.     **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this

Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard."  *Talavera*

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

§ 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is

supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the

claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990) (holding that review of the Secretary's decision is not *de novo* and that the

Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he

deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*.

§ 404.1520(f).  If the claimant can perform such requirements, then he or she is not

disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the

burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*.

§ 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the

claimant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy" in light of the claimant's age, education, and

work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted);

*see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.**      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step

sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that

Plaintiff met the insured status requirements of the Act through March 24, 2024.  (Dkt. 5

at 91).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

work activity since July 17, 2018, the alleged disability onset date.  (*Id*. at 92).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of:

lumbar degenerative disc disease, right shoulder superior labrum anterior and posterior

("SLAP") tear, cervical degenerative disc disease, and obesity.  (*Id*.).  The ALJ further

found that Plaintiff's medically determinable impairment of adjustment disorder with

depressed mood was non-severe.  (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any Listing.  (*Id*.

at 94).  The ALJ particularly considered the criteria of Listing 1.02, 1.04, and Plaintiff's obesity in reaching his conclusion.  (*Id.* at 94-95).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except as follows:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs, but he cannot climb ladders ropes or scaffolds; and he can frequently reach, handle and finger objects.

(*Id.* at 95).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 100).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker, office helper, and routing clerk.  (*Id.* at 100-01).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 101).

## II.   **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred in crafting an unsupported RFC finding Plaintiff capable of frequent reaching, handling, and fingering; (2) the ALJ erroneously characterized Plaintiff's activities of daily living; (3) new and material evidence submitted to the Appeals Council warranted remand; and (4) the ALJ failed to consider Plaintiff's inability to meet minimal standards of attendance in finding him capable of performing work.  (Dkt. 10-1 at 19-30).

The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A.    **The ALJ's Determination that Plaintiff is Capable of Frequent Reaching, Handling, and Fingering**

In determining Plaintiff's RFC, the ALJ assessed Plaintiff capable of frequently reaching, handling, and fingering objects.  (Dkt. 5 at 95).  Plaintiff argues that in making this determination, the ALJ's decision overlooked certain medical evidence, ignored Plaintiff's testimony, and lacked medical opinion evidence to support the finding.  Therefore, Plaintiff argues, the determination is not supported by substantial evidence.  (Dkt. 10-1 at 19-23).  In response, the Commissioner argues that the ALJ's reasoning is sufficiently set forth in his decision and the medical opinions and substantial evidence support the determination.  (Dkt. 11-1 at 6-18).  The Court agrees with the Commissioner.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id*.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotations and citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

However, an ALJ does not commit reversible error where he gives a claimant the benefit of the doubt and assesses limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints.  *See, e.g., Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) ("[This] is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony.  This does not constitute reversible error."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted, and assessed a more generous limitation of 5% off-task time.  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." (internal citation omitted)).

Plaintiff first argues that the ALJ failed to mention his cervical radiculopathy and to consider a November 2018 cervical nerve conduction study which showed evidence "highly suggestive of cervical radiculopathy involving the right C7 nerve root."  (Dkt. 6 at 199-200).  But it is well-settled that "'[a]n ALJ is not required to discuss every piece of evidence submitted,' and the 'failure to cite specific evidence does not indicate that such

evidence was not considered.'" *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019)

(quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012));

*Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL

1815754, at *5 (W.D.N.Y. Apr. 10, 2020) ("The ALJ is not required to reconcile explicitly

every conflicting shred of medical testimony.  Nor is the ALJ required to mention or discuss

every single piece of evidence in the record." (internal quotations and citation omitted)).

The ALJ's failure to specifically discuss this evidence does not demonstrate that it was

ignored, as Plaintiff suggests, and does not serve as a basis for remand.

Similarly, Plaintiff contends that the ALJ's mentioning that a September 10, 2018

x-ray was negative for bony abnormalities or degeneration and that his November 30, 2018

x-ray confirmed these unremarkable findings, demonstrated that the ALJ "failed to

consider that x-rays are more commonly used for examining broken bones and MRIs are

better for evaluating soft tissue injuries." (Dkt. 10-1 at 21).  But the relative usefulness of

an MRI does not render information contained in the x-rays wholly irrelevant, nor is there

any suggestion that the ALJ misinterpreted or mischaracterized the x-ray results.

Moreover, the ALJ did specifically cite to Plaintiff's MRI testing in the decision.

Accordingly, this does not amount to error.

Additionally, Plaintiff argues that the record lacks an "acceptable medical source"

to support the ALJ's conclusions about Plaintiff's ability to reach, handle, and finger

objects.  While none of the medical opinions expressly opined that Plaintiff is capable of

frequent reaching, handling, and fingering objects, this is not a case where there was a

complete absence of medical opinion evidence relating to Plaintiff's manipulative

limitations.  To the contrary, the ALJ cited to opinions addressing these limitations and explained his evaluation of the persuasiveness of those opinions.

For example, the ALJ considered the opinions of State agency physicians J. Lawrence, M.D, and J. Koenig, M.D.  On March 12, 2019, Dr. Lawrence opined that Plaintiff had no manipulative limitations.  (Dkt. 5 at 185).  On September 30, 2019, Dr. Koenig concurred.  (*Id.* at 197).

The ALJ explained his assessment of these opinions:

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:  The Department of Disability Determination services (DDS) at the initial level determined [Plaintiff's] degenerative disc disease, and major joint dysfunction were severe impairments and his hypertension was a nonsevere impairments.  The state Agency examiner at the reconsideration level confirmed this severity rating, and determined [Plaintiff's] newly alleged depression was a nonsevere impairment.  State Agency consulting medical experts at both levels opined [Plaintiff] could engage in a mildly reduced range of medium exertional work.  . . . (Exhibit 1A & 3A).  The undersigned, is partially persuaded by the physical residual functional capacity because it is supported by objective findings.  However, to more narrowly tailor [Plaintiff's] residual functional capacity in light of [Plaintiff's] subjective complaints of worsening functional deficits, the undersigned finds a more restricted residual functional capacity assessment is warranted.

(Dkt. 5 at 99).

The ALJ also addressed the opinion of Dena Martinez, Plaintiff's massage therapist. On April 29, 2020, Ms. Martinez completed a functional capacity assessment of Plaintiff. (Dkt. 7 at 172).  In it, she opined that he could not lift any weight; could stand or walk less than two hours per day; could sit for 30 minutes alternated with stretching; could not push and pull with upper or lower extremities; could not bend, twist, or reach overhead; needs to adjust every 30 minutes or spasms will occur.  (*Id.*).  She indicated that he cannot "walk

well" and is "in chronic pain."  (*Id.*).

The ALJ explained his assessment of Ms. Martinez's opinion as follows:

An April 29, 2020, physical residual functional capacity assessment from Dena Martinez, [Plaintiff's] massage therapist, details [Plaintiff] cannot walk well and is in chronic pain.  Ultimately, based on her treatment of [Plaintiff] from early-June 2019, through December 2019, she opined [Plaintiff] can stand or walk less than 2 hours in an 8-hour workday; sit for 30 minutes at a time but less than 6 hours in an 8-hour workday; needs to alter his position every 30 minutes; is limited in pushing and pulling with the bilateral upper and lower extremities; and he cannot bend, twist, or reach overhead due to pain (Exhibit 19F).  The undersigned is not persuaded by Ms. Martinez opinion because it exceeds the scope of her professional training and expertise.  Additionally, such heightened restrictions are not supported by [Plaintiff's] stable and mild imaging findings, not his largely normal physical examination findings, as discussed above.

(Dkt. 5 at 98).

In addition, at the hearing, Plaintiff testified that he has pain and numbness from his neck to his fingertips in his left arm and that gripping anything with his left hand is a "no go."  (Dkt. 5 at 148, 151-52).  The ALJ not only did not ignore this testimony, as Plaintiff suggests, but he expressly weighed Plaintiff's subjective complaints against the medical assessments.  (*See id.* at 99).  This was appropriate.  *See Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners.").

This case is distinguishable from those in which there are no medical opinions and the ALJ relies solely on his own lay interpretation of medical evidence in crafting a highly specific RFC or interprets a vague medical opinion as supporting a highly functional

limitation.  *See, e.g., Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *4 (W.D.N.Y. Apr. 28, 2020) (concluding that RFC finding was unsupported by substantial evidence where the ALJ included a highly specific sit/stand limitation based solely on medical opinion that Plaintiff had "moderate limitations" for walking and standing).  Here, the ALJ was not purporting to craft a specific RFC based solely on his own lay interpretation.  Instead, he permissibly partially credited Plaintiff's subjective complaints in connection with the medical evidence before him and accordingly included in the RFC finding a limitation that was not expressly identified in and was more restrictive than the medical opinions of record.  The ALJ explained his consideration of the medical opinions and provided appropriate reasons for assessing the persuasiveness of those opinions.  On these facts, Plaintiff is not entitled to a reversal of the Commissioner's determination.  *See Mary Diane K.*, 541 F. Supp. 3d at 277 ("Here, the ALJ explained that she was affording Plaintiff the benefit of the doubt and crediting her statement that her symptoms increased with use of her hands, as well as taking into account her testimony regarding her cervical spine impairments. . . . This is simply not a basis for reversal."); *Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion.  But this does not constitute reversible error.").

### B.   <u>Activities of Daily Living</u>

It is well-settled that an ALJ may consider a claimant's activities of daily living when evaluating his credibility.  *See, e.g., Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d

427, 436 (W.D.N.Y. 2018).  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.*

Here, the ALJ concluded that "[a]fter careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Dkt. 5 at 96).  In support of that conclusion, the ALJ addressed Plaintiff's activities of daily living, as well as noting that despite Plaintiff's subjective complaints of pain, his treatment records reflected improvement in symptoms, a response to treatment, and unremarkable or mild findings in objective imaging.  The ALJ explained his assessment of Plaintiff's testimony regarding his activities of daily living as follows:

> [Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Plaintiff] is independent with his personal care.  Although he did testify to limited activities, he is able to drive, prepare simple meals, do light cleaning such as wiping down counters and attends his children's events.

(Dkt. 5 at 99; *see also id.* at 93 ("Although [Plaintiff] testified that he is annoyed when

- 12 -

people are around him, he reported he is a Board member for a not for profit organization, which entails meeting with parents and mentoring children.  Likewise, he indicated he attends his children's extracurricular activities, and enjoys coaching."); 94 ("Although [Plaintiff] alleges he is limited in completing activities of daily living, at hearing, he testified that he can drive, do light shopping, prepare simple meals, do light cleaning such as wiping down counters and attend his children's extracurricular events.").

Plaintiff argues that the ALJ conflated his activities of daily living with an ability to keep a full-time job and that the ALJ failed to recognize the extent to which Plaintiff participates in these activities.  As an example, he contends that the ALJ's statement that he "enjoys coaching" was inaccurate because the record is not clear whether Plaintiff continued coaching following his car accident.  However, the challenges Plaintiff raises to the ALJ's descriptions of his activities of daily living amount to discrepancies in the record that were for the ALJ to resolve in reaching his conclusion that Plaintiff is capable performing light work.  Plaintiff has not demonstrated that the ALJ's description and consideration of his activities amount to a mischaracterization of the evidence sufficient to undermine the ALJ's conclusions.  *See Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with his report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"); *Ortiz v. Saul*, No. 1:19-CV-00942 (ALC), 2020 WL 1150213, at *7 (S.D.N.Y. Mar. 10, 2020) ("In addition, evidence in the record demonstrated Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry; Plaintiff similarly was able to use public transportation without assistance. . .

. Courts have found these activities, along with consistent medical opinions, support a light work RFC finding."); *Basta v. Comm'r of Soc. Sec.*, No. 18-CV-0986L, 2019 WL 6713616, at *5 (W.D.N.Y. Dec. 10, 2019) ("Accordingly, I find that the ALJ did not mischaracterize Basta's activities of daily living. The ALJ referenced evidence both supportive of and contrary to Basta's impairments.  Weighing this evidence, the ALJ acted within his discretion in concluding that Basta had a greater functional ability than alleged." (internal quotation marks omitted)); *Herrington v. Berryhill*, No. 3:18-cv-0315(WIG), 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) ("[I]t is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility.") (collecting cases).

In sum, the Court is not persuaded that the ALJ mischaracterized or exaggerated Plaintiff's activities of daily living and his other reasons for not finding Plaintiff fully credible were sound.  The Court cannot conclude that the ALJ's resolution of the conflicting aspects of the record was outside his discretion.  Remand is not warranted on this basis.

## C.    **Appeals Council Consideration of Evidence**

Plaintiff argues that the Appeals Council improperly rejected additional medical evidence, pointing specifically to the following evidence he submitted to the Appeals Council, including updated treatment notes from: neurosurgeon Eric Roger, M.D., dated June 16, 2020 and October 12, 2020 (Dkt. 5 108-21); pain management provider Mikhail Strut, M.D. dated September 30, 2020 (*id.* at 78-80, 173-75); and primary care provider John Bauers, M.D., dated December 1, 2020 (*id.* at 14-17).  Plaintiff contends that the

Appeals Council failed to offer a sufficient explanation for its rejection of this evidence. The Court disagrees.

"[T]he Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (citing 20 C.F.R. § 416.1470). "Material evidence is both relevant to the claimant's condition during the time period for which benefits were denied and probative, and the claimant must show a reasonable possibility that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Hairston-Scott v. Comm'r of Soc. Sec.*, No. 20-758, 2021 WL 3777581, at *2 (2d Cir. Aug. 21, 2021) (alterations, quotations, and citation omitted).

Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Newbury v. Astrue,* 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting *Pollard,* 377 F.3d at 193). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council. *See Vitale v. Apfel,* 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) ("While the existence of a

pre-existing disability can be proven by a retrospective opinion, such an opinion must refer

clearly to the relevant period of disability and not simply express an opinion as to the

claimant's current status").   Further, the Appeals Council is not required to consider

evidence that is cumulative of existing evidence in the record.   *See Lynnessa*, 2021 WL

4437184, at *7 ("The Appeals Council is not required to consider evidence that is

cumulative of the existing evidence of record, such that there is not 'a reasonable

probability that the additional evidence would change the outcome of the decision.'"

(quoting 20 C.F.R. § 404.970(b)).

> The Appeals Council addressed the new evidence submitted by Plaintiff as follows:
>
> You submitted treatment records from RES Physical Medicine & Rehab Services, dated May 4, 2020 through May 22, 2020 (7 pages), and from Dr. Eric Roger, M.D., dated June 16, 2020 (9 pages).
>
> We find this evidence does not show a reasonable probability that it would change the outcome of the decision.   We did not exhibit this evidence.
>
> You also submitted treatment records from RES Physical Medicine and Rehab Services, dated September 4, 2020 through May 6, 2021 (68 pages), and from Dr. Eric Roger, M.D., dated October 12, 2020 (5 pages).
>
> The Administrative Law Judge decided your case through September 2, 2020.   This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 2, 2020.
>
> If you want us to consider whether you were disabled after September 2, 2020, you need to apply again.

(Dkt. 5 at 7).

Plaintiff emphasizes the October 12, 2020 treatment record from Dr. Roger, which

reflects that Dr. Roger discussed with Plaintiff "further conservative management versus

surgical intervention."   (*Id.* at 120).   Dr. Roger specified that "[c]onservative management

could include various medications, physical therapy, chiropractic care, traction, epidural injections, etc." (*Id.*).  He indicated that Plaintiff understood the risks and benefits of surgical intervention and "wishe[d] to proceed with surgery." (*Id.* at 121).  Plaintiff argues that the ALJ's decision placed great weight on Dr. Roger's nonsurgical approach and the fact that Plaintiff was not currently a candidate for surgery, and that had the ALJ had the opportunity to review the later records indicating Plaintiff wanted to go forward with surgery, he "could not have discounted Plaintiff's complaints based upon his history of conservative treatment and likely would have found Plaintiff more limited." (Dkt. 10-1 at 28).

But the records from Dr. Roger, as well as other records demonstrating that Plaintiff continued to seek treatment for his musculoskeletal complaints, do not only post-date the ALJ's decision, they are also largely cumulative of the previously provided treatment records.  As a result, the Court cannot conclude that the additional evidence contains sufficient information that would reasonably be expected to change the disability determination.  Surgical intervention was discussed as a future possibility in other records already before the ALJ.  (*See* Dkt. 5 at 569 (Dr. Roger's treatment record reflecting a discussion of conservative management versus surgical intervention)).  A record reflecting Plaintiff's changed decision to pursue surgery after the issuance of the ALJ's decision does not amount to a circumstance warranting remand, nor is it the equivalent of Plaintiff actually having such surgery.

In sum, "[t]he evidence submitted by [Plaintiff] to the Appeals Council does not contradict the ALJ's finding . . . and therefore the ALJ's determination is supported by

substantial evidence." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Accordingly, the Court finds no basis for remand based on the Appeals Council's assessment of the additional evidence submitted by Plaintiff.

### D.     Plaintiff's Attendance

Finally, Plaintiff contends that the ALJ failed to consider his inability to meet minimal standards of attendance in light of his demonstrated need for medical appointments. Specifically, he notes that he had a total of 196 medical appointments in a 23-month period, or an average of 8.5 missed days per month. (Dkt. 10-1 at 28-29). He argues that these absences make clear that he is unable to work on a "regular and continuing" basis.

But even if Plaintiff continues to require regular medical appointments, "[a]s the Commissioner notes and other courts have recognized in rejecting similar arguments, it is possible that such appointments could have been completed during non-work hours." *Ann C. v. Comm'r of Soc. Sec.*, No. 18-CV-1291-FPG, 2021 WL 492113, at *5 (W.D.N.Y. Feb. 10, 2021); *see also Linda G. v. Comm'r of Soc. Sec.*, No. 2:21-CV-48-KJD, 2022 WL 1845599, at *14 (D. Vt. June 3, 2022) ("Even if she did have such routine appointments, Plaintiff does not specify how long any of her medical appointments would be. Nor does Plaintiff assert that these appointments could not be scheduled for a time outside the workday."); *Ivy S. v. Kijakazi*, No. 20-CV-981F, 2021 WL 5988410, at *4 (W.D.N.Y. Dec. 16, 2021) ("It is significant that 'this Court has found that the need for a medical visit does not necessarily equate to missing an entire day of work and that the need for multiple medical visits does not compel disabling absenteeism.'" (quoting *Samantha R. v. Comm'r*

*of Soc. Sec.*, 2021 WL 2820987, at * 5 (W.D.N.Y. July 7, 2021))); *Jeffrey C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1393, 2021 WL 5711997, at *8 (N.D.N.Y. Dec. 2, 2021) ("First, even taking the duration and frequency of plaintiff's various medical treatments into account, there is insufficient evidence in the record from which to conclude that plaintiff would be absent from work to a degree [necessary] to establish total disability." (internal quotation marks omitted)); *Joe N. v. Comm'r of Soc. Sec.*, No. 19-CV-1384S, 2021 WL 4316556, at *3 (W.D.N.Y. Sept. 23, 2021) ("Defendant is correct that a single medical appointment on a given day does not necessarily mean that an entire day of work would be missed.").

Here, Plaintiff identifies no medical provider who has opined that he would be absent a certain number of days per month or any basis to conclude that each appointment is the equivalent of an entire missed day of work. Plaintiff's contentions on this point are largely speculative and do not support remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 20, 2023
       Rochester, New York